STATE OF NORTH CAROLINA v. JACK EDWARD SYKES

No. 56

(Filed 10 April 1974)

1. Constitutional Law § 32— Miranda warnings — requirement after arrest

Miranda warnings and waiver of counsel are required when, and only when, the defendant is being subjected to custodial interrogation, that is, after defendant has been taken into custody or otherwise deprived of his freedom of action in any significant way.

2. Constitutional Law § 32; Criminal Law § 75— no Miranda warnings — admission of defendant — admissibility

Where an officer stopped defendant because he was driving his vehicle in an erratic manner and the officer conducted a general on-the-scene investigation during which he asked defendant if defendant had been drinking, the trial court did not err in allowing into evidence the question and defendant's affirmative answer, though Miranda warnings had not been given defendant at that time, since defendant was not then under arrest.

3. Automobiles § 126; Constitutional Law § 33; Criminal Law § 64— breathalyzer test — Miranda requirements inapplicable

Miranda requirements are inapplicable to a breathalyzer test administered pursuant to the statutes of this State; therefore, whether defendant had waived counsel at the time he initially agreed to take

---

State v. Sykes

---

a breathalyzer test was immaterial, and the trial court properly allowed the test results into evidence.

4. **Constitutional Law §§ 32, 33— breathalyzer test — warnings given — no coercion**

Where defendant was advised that refusal to take the breathalyzer test would result in revocation of his driver's license for sixty days and he was advised of his right to the presence of counsel and a witness to view the testing procedures, defendant's prior consent given to an officer before the warnings were given him had no coercive effect upon him and afforded no ground for a new trial.

DEFENDANT appeals from decision of the Court of Appeals, 20 N.C. App. 467, 201 S.E. 2d 544, upholding judgment of *Martin (Perry), J.,* 21 May 1973 Session, WAYNE Superior Court.

Defendant was initially tried in district court upon a warrant charging that on 14 June 1972 at 11:50 p.m. he unlawfully and willfully operated a motor vehicle upon a public street or highway while under the influence of intoxicating liquor, third offense. District Judge Lester W. Pate found defendant guilty of driving under the influence, first offense, and from judgment pronounced defendant appealed to the Superior Court of Wayne County for trial *de novo* before a jury.

Don Wood, State Highway Patrolman, testified that on 14 June 1972 at 11:50 p.m. he saw defendant operating a 1972 model Ford pickup truck on a public street or highway in Goldsboro, Wayne County. He followed the truck driven by defendant and "observed it run off the right shoulder, weaving noticeably and finally crossing the center line of the highway a couple of times." Defendant turned right into a driveway and stopped. Patrolman Wood pulled in behind the truck and asked defendant to get out. Defendant was wearing ordinary work clothes with the exception of his shoes—"he was wearing soft pink lady's slippers." Officer Wood asked defendant for his driver's license and at that time smelled a high odor of alcohol on his breath. Defendant's face was very red and flushed. "I asked Mr. Sykes if he had been drinking and he said yes. I asked him to walk for me. As he was walking there on the driveway he was staggering and stumbling. . . . I gave the balance test and at the time I gave him this test he fell forward noticeably. I advised Mr. Sykes he was under arrest for driving under the influence and asked him if he would take a breathalyzer test. He said that he would."

Officer Wood further testified that two other persons, both female, were in defendant's truck. A quick search of the vehicle revealed no alcoholic beverages. As defendant walked to the patrol car he staggered noticeably.

Officer Wood advised defendant of his constitutional rights en route to the jail and defendant said he understood them. This witness also stated that after placing defendant in the patrol car and advising him of his rights he explained the breathalyzer test and told defendant "that the State of North Carolina had a law whereby when you were arrested for driving under the influence you were required to submit to a breathalyzer test. Refusal to take such a test would result in a 60-day suspension of your driver's license. After telling Mr. Sykes this, he still did not know whether he wanted to take the test or not. I explained it to him again and he said he would take it." In the opinion of this officer, "Sykes was very much under the influence—to the extent that both his mental and physical faculties were appreciably impaired."

Officer Roger Flynn testified that he had a valid breathalyzer operator's license and that prior to giving defendant the breathalyzer test early in the morning hours of 15 June 1972 he advised him of his statutory right to have an attorney or witness present to observe the test so long as it did not delay the test over thirty minutes. Defendant said he did not want an attorney or witness. Officer Flynn gave the test at 12:25 a.m. and it showed .15 alcoholic content in the blood.

Defendant offered no evidence. His motion to dismiss was denied. The jury returned a verdict of guilty as charged. From judgment pronounced defendant appealed to the Court of Appeals which found no error. Defendant thereupon appealed to the Supreme Court asserting constitutional and statutory violations of his rights. These alleged violations will be discussed in the opinion.

*Robert Morgan, Attorney General; Claude W. Harris, Assistant Attorney General, for the State of North Carolina.*

*Douglas P. Connor, Attorney for defendant appellant.*

HUSKINS, Justice.

Defendant assigns as error the trial court's action in admitting over objection the following testimony of Officer Wood:

"I asked Mr. Sykes if he had been drinking and he said yes. I asked him to walk for me. As he was walking there on the driveway he was staggering. . . . I gave the balance test and at the time I gave him this test he fell forward noticeably. I advised Mr. Sykes he was under arrest for driving under the influence. . . . "

Defendant contends his incriminating statement was elicited by custodial interrogation before he had been advised of his constitutional rights as mandated in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). He therefore argues that his incriminating statement should have been excluded.

[1] *Miranda* warnings and waiver of counsel are required when, and only when, the defendant is being subjected to custodial interrogation. *State v. Blackmon,* 284 N.C. 1, 199 S.E. 2d 431 (1973). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra.*

At the time Officer Wood asked defendant if he had been drinking, defendant was not in custody, under arrest, or "deprived of his freedom of action in any significant way." While there is no absolute test to ascertain exactly when an arrest occurs, the time and place of an arrest is determined in the context of the circumstances surrounding it. *State v. Allen,* 282 N.C. 503, 194 S.E. 2d 9 (1973).

Officer Wood's initial detention of defendant to investigate defendant's erratic driving did not amount to an arrest. "The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of a routine investigation, and any incriminating evidence which comes to the officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest." *United States v. Harflinger,* 436 F. 2d 928 (8th Cir. 1970).

Furthermore, the decision in *Miranda* was not intended to hamper the traditional function of police officers in investigating crime. "Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In

such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. * * * In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." *Miranda v. Arizona, supra.*

In relation to routine police investigations of traffic violations, one federal court had this to say:

"The questioning of a driver of a stopped car on an open highway by one policeman, without more, cannot be characterized as a 'police dominated' situation or as 'incommunicado' in nature. * * * This general on the scene questioning is a well accepted police practice; it is difficult to imagine the police warning every person they encounter of his *Miranda* rights. This is why the opinion in *Miranda* expressly excluded 'on-the-scene questioning' from the warning requirements." *Lowe v. United States,* 407 F. 2d 1391 (9th Cir. 1969).

[2] In the factual context of this case defendant was not in custody and Officer Wood was merely in the process of conducting a general on-the-scene investigation when defendant responded that he had been drinking. It was only after that admission, and after observing defendant's inability to walk normally or retain his balance that he was placed under arrest. In light of these facts, *Miranda* warnings were not required.

We observe in passing that *State v. Beasley,* 10 N.C. App. 663, 179 S.E. 2d 820 (1971), and *State v. Tyndall,* 18 N.C. App. 669, 197 S.E. 2d 598 (1973), should not be interpreted to hold that the rules of *Miranda* are inapplicable to *all* motor vehicle violations. We said in *State v. Hill,* 277 N.C. 547, 178 S.E. 2d 462 (1971): "One who is detained by police officers under a charge of driving under the influence of an intoxicant has the same *constitutional* and statutory rights as any other accused." (Emphasis added.) We adhere to that view. Even so, it was no violation of this defendant's constitutional rights for the officer to observe and converse with him during the on-the-scene investigation and then testify with respect to defendant's state of insobriety. For a general discussion on the applicability of *Miranda* to traffic offenses, see Annotation, Police Interrogation

—Traffic Offense, 25 A.L.R. 3d 1076 (1969). Defendant's first assignment of error is overruled.

[3] After advising defendant he was under arrest for driving under the influence of intoxicants, Officer Wood asked him if he would take a breathalyzer test and defendant said that he would. Officer Wood then requested Trooper Flynn to come to the jail to perform the breathalyzer test. Prior to giving defendant the test Trooper Flynn advised him of his statutory rights to an attorney or a witness to observe the test so long as it did not delay the test over thirty minutes. Defendant said he did not want an attorney or witness and the test was administered with his consent at 12:25 a.m. on 15 June 1972. Over defendant's objection, the results of the breathalyzer test were admitted in evidence. The action of the court in this respect constitutes the basis for defendant's second assignment of error.

Defendant concedes that the breathalyzer test was properly administered by a qualified operator. His argument is that at the time Officer Wood obtained defendant's initial commitment to take the breathalyzer test, defendant had not waived his constitutional right to counsel and had not been advised of his statutory rights embodied in G.S. 20-16.2(a).

We hold it immaterial that defendant had not waived counsel at the time he initially told Officer Wood he would take the breathalyzer test. Admission of the breathalyzer test is not dependent upon whether *Miranda* warnings have been given and constitutional right to counsel waived. In *State v. Randolph,* 273 N.C. 120, 159 S.E. 2d 324 (1968), this Court, citing *Schmerber v. California,* 384 U.S. 757, 16 L.Ed. 2d 908, 86 S.Ct. 1826 (1966), held that the taking of a breath sample from an accused for the purpose of the test is not evidence of a testimonial or communicative nature within the privilege against self-incrimination. For that reason the requirements of *Miranda* are inapplicable to a breathalyzer test administered pursuant to our statutes.

[4] Equally untenable is defendant's contention that the results of the breathalyzer test were inadmissible because his initial "commitment" to take the test was obtained before he was advised of his statutory rights embodied in G.S. 20-16.2(a).

G.S. 20-16.2(a), as written at the time the offense involved in this case was committed, read in pertinent part as follows:

> "(a) Any person who operates a motor vehicle upon the public highways of this State . . . shall be deemed to have given consent, subject to the provisions of G.S. 20-139.1, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this State . . . while under the influence of intoxicating liquor. The law-enforcement officer shall designate which of the aforesaid tests shall be administered. Before any of the tests shall be administered, the accused person shall be permitted to call an attorney and to select a witness to view for him the testing procedures; providing, however, that the testing procedures shall not be delayed for these purposes for a period of time of over thirty (30) minutes from the time the accused person is notified of these rights."

Any person under arrest on 14 June 1972, the date of this offense, who willfully refused to take the breathalyzer test was subject to mandatory revocation of his driving privilege for a period of sixty days. See G.S. 20-16.2(c) as rewritten by Chapter 1074 of the 1969 Session Laws.

Under G.S. 20-16.2(a) defendant, by driving his vehicle on the public highway, is deemed to have given his consent to take the test. Refusal to take the test subjected him to the sixty-day revocation penalty. Under the statute he was entitled to be informed of that fact and he was so informed by Officer Wood. Before the test was administered he had the right to call an attorney and to select a witness to view for him the testing procedures. He was so informed by Trooper Flynn and stated he did not want an attorney or witness.

It is perfectly apparent that defendant expressly waived the presence of counsel and of a witness to view the testing procedures and voluntarily took the breathalyzer test. His statement to Officer Wood, prior to being advised of his statutory

rights, that he would take the test had no coercive effect upon him and affords no ground whatsoever for a new trial. Defendant was fully advised of the rights afforded him by the statute and was entitled to nothing more under either the statute or the Constitution.

For the reasons stated, decision of the Court of Appeals is

Affirmed.