STATE OF NORTH CAROLINA v. DONALD SAMUEL LAWSON

No. 58

(Filed 15 May 1974)

1. **Constitutional Law § 32; Criminal Law § 75— defendant in custody — necessity of Miranda warnings**

    The trial court erred in determining that no *Miranda* warning was required and that questions put by an officer to defendant were part of the officer's investigation of a routine accident where the evidence tended to show that defendant was arrested for public drunkenness, placed in a patrol car, advised of his rights, asked if he understood his rights, and then interrogated.

2. **Constitutional Law § 37; Criminal Law § 76— rights of defendant in custody — silence as waiver**

    Even if defendant understood his rights, the trial court erred in holding that he waived those rights where the evidence tended to show that defendant was told his rights and asked if he understood them before interrogation began, but defendant did not respond to the inquiry.

State v. Lawson

3. **Constitutional Law § 32; Criminal Law § 75— Miranda warnings — applicable to persons in custody**

Rights set forth in *Miranda v. Arizona* are not limited to persons charged with felonies or misdemeanors; rather, those rights relate to any person being subjected to custodial interrogation concerning a criminal charge.

ON *certiorari* to review the decision of the North Carolina Court of Appeals reported in 20 N.C. App. 171, 201 S.E. 2d 97 (1973), which found no error in the trial before *Rouse, J.*, at the 30 April 1973 Session of CARTERET Superior Court.

Defendant was initially tried in Carteret District Court upon a warrant charging that on 20 January 1973 about 1:25 a.m. he (1) appeared in an intoxicated condition in a public place, and (2) operated a motor vehicle upon a public highway while under the influence of intoxicating liquor. Defendant pleaded guilty to public intoxication and not guilty to driving under the influence. District Court Judge J. W. H. Roberts found defendant guilty of both offenses, and from judgments pronounced, defendant appealed to Carteret Superior Court. In Superior Court defendant again entered pleas of guilty of public intoxication and not guilty of driving under the influence. The jury returned a verdict of guilty of driving under the influence, and from judgment imposed defendant appealed to the Court of Appeals. That court found no error in the trial. We allowed *certiorari* on 5 February 1974.

The State's evidence consisted primarily of testimony by C. R. Askew, a State Highway Patrolman stationed in Carteret County. Askew's pertinent testimony is accurately summarized in the following findings of fact made by the trial judge after a *voir dire* hearing to determine the admissibility of statements allegedly made by defendant:

"1. During the early morning hours of January 20, 1973, Mr. C. R. Askew, a North Carolina State Highway Patrolman, went to the scene of an accident on Old Highway 70 west of Newport at about 1:40 a.m. He found a vehicle in the ditch on the north side with the motor running and the lights on. The defendant was under the wheel of the automobile, a 1968 Ford; and at the time another vehicle was about to pull him out of the ditch.

"2. That the officer then approached Mr. Lawson and asked him to get out of the car and observed that he could

hardly stand, and in the opinion of the officer the defendant was very much under the influence of some intoxicating beverage.

"After asking the defendant for his license the defendant gave him his license; whereupon, the officer placed the defendant under arrest for being publicly intoxicated. After the defendant was arrested the officer placed the defendant in his automobile and then gave him the 'Miranda' warning [which] in all respects complied with the requirements of 'Miranda,' and the precise warning appears in the record in this case; and the Court finds that he gave the warning as stated by the officer. After being given the warning, the defendant made no response. The officer then proceeded to question the defendant as to what had happened and the defendant made certain incriminating statements as will appear in the record."

These statements and other facts surrounding the arrest and questioning of defendant are discussed later in this opinion. After finding the above facts, the trial judge ruled that the statements allegedly made by defendant were admissible into evidence, and Patrolman Askew was allowed to testify about them. Askew also testified that defendant was taken to the police department in Newport, North Carolina, and there defendant took various "performance tests" and was given a breathalyzer test by Officer C. R. Tomlinson of the Newport Police Department. Details surrounding the administration and results of these tests are fully discussed later in this opinion. Under cross-examination by defense counsel, Patrolman Askew stated: "I never saw Mr. Lawson drive an automobile. So, what I am telling you here today is that the reason he is charged with driving under the influence is that he told me that he had been driving."

Defendant offered evidence tending to show that he was not driving the automobile on the occasion in question, but rather that the automobile was being driven by a girl who was taking defendant home and who was not familiar with the operation of the car. Some lights from an oncoming car had blinded the girl and caused her to drive off the road. Someone named Jerry—who had been following the car in which defendant was a passenger—and the girl had gone to get help when Patrolman Askew arrived and took defendant to the police department in Newport. Defendant admitted that he was drunk on the

---

State v. Lawson

---

evening of 20 January 1973, but he testified that he did not remember Patrolman Askew giving him his *Miranda* rights.

*Attorney General Robert Morgan and Assistant Attorney General Ralf F. Haskell for the State.*

*Wheatly & Mason by L. Patten Mason for defendant appellant.*

MOORE, Justice.

Defendant first asserts that the trial court erred in admitting into evidence incriminating statements made by defendant to the investigating officer at the scene of the accident.

Defendant was arrested for public drunkenness by Patrolman Askew and placed in the patrol car. He was then advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and questioned by the patrolman. Among his other rights, defendant was advised that he had the right to an attorney and that he could call an attorney when he arrived at the Newport Police Department. The patrolman asked defendant if he understood his rights. Defendant made no response. The patrolman then questioned defendant as to what had happened and defendant told him that he was driving the car and was attempting to turn around in the road when the car ran into the ditch. This statement was admitted into evidence over the objection of defendant. Without this statement the State had no direct proof that defendant was driving.

Defendant contends this statement was elicited by custodial interrogation before he had knowingly and intelligently waived his rights guaranteed by *Miranda,* and that the statement should have been excluded. *Miranda* warnings and waiver of counsel are required when and only when a person is being subjected to "custodial interrogation"; that is, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra; State v. Blackmon,* 284 N.C. 1, 199 S.E. 2d 431 (1973).

In *State v. Sykes,* 285 N.C. 202, 203 S.E. 2d 849 (1974), Justice Huskins, for the Court, stated:

" . . . 'The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may

be afoot is permissible for the purpose of limited inquiry in the course of a routine investigation, and any incriminating evidence which comes to the officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest.' *United States v. Harflinger*, 436 F. 2d 928 (8th Cir. 1970).

"Furthermore, the decision in *Miranda* was not intended to hamper the traditional function of police officers in investigating crime. 'Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. * * * In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.' *Miranda v. Arizona, supra.*"

[1] In the present case Patrolman Askew testified that he arrested defendant for public drunkenness and placed him in the patrol car. Clearly, the subsequent interrogation was "custodial interrogation," and the trial court erred in the conclusion of law that it made following the *voir dire:*

"1. That no *Miranda* warning was required, that the questions asked were part of the officer's investigation of a routine accident and was not an in-custody interrogation and under the circumstances here the *Miranda* warning was not required."

Defendant was highly intoxicated or drunk at the time of his arrest, and even assuming he was in condition to intelligently and understandingly waive his rights, the record discloses and the trial court found that he made no response when asked if he understood those rights. He was further advised by the patrolman that he could call an attorney when he reached Newport, but without waiting until they reached Newport the patrolman immediately started questioning him about what had happened. As a result of this questioning, the statement allegedly made by defendant was secured. See *State v. Edwards*, 282 N.C. 201, 192 S.E. 2d 304 (1972).

State v. Lawson

The trial court next concluded:

"2. That the *Miranda* warning was in all respects given and the defendant by his silence and continued answering of questions waived any right to counsel,

"(After the State had rested its case, the court on its own motion amended the above conclusions of law and provided 'and any statements were voluntarily and understandingly made.')"

Prior to amending his conclusions of law to the effect that defendant's statements were "voluntarily and understandingly made," the trial judge had heard the testimony of the arresting officer that defendant "was the drunkest man he had seen in a right good while." In further describing defendant's condition after he arrived at the police station, the patrolman stated:

"After I got him to the police station, I gave him some tests which I have described to the solicitor. In my opinion, he failed these tests. All of them. I asked him questions at the police station. I asked him a question as to whether or not he had been driving an automobile and his answer at the police station was 'no.' He said 'no' to that question. On the form that I put down he had a hard time understanding the performance tests that I was trying to give him for what to do. I had to tell him a couple of times each or what I wanted him to do two or three times each. After I told him two or three times he tried to do them, but he still couldn't do them."

The trial judge also had heard the following testimony from Officer Tomlinson who administered the breathalyzer test almost an hour after defendant had been arrested:

"I have been a breathalyzer operator approximately ten months. I have run approximately 70 or 80 tests during this ten months' period. I believe Mr. Lawson's test had the highest results I have ever obtained in giving any of these tests. On the scale of Exhibit No. 1, it runs from .0 to .40. The highest reading that the machine will give on this scale is .40. Mr. Lawson's test was within 5 points of being the highest reading that you could give. I observed Mr. Lawson and, in my opinion, he was drunk, very drunk."

[2] Assuming that defendant understood his rights, we hold that the court erred in concluding as a matter of law that by

defendant's silence and continued answering of questions he waived any right to counsel. These facts are not sufficient to constitute a waiver of counsel. This is stated in *State v. Blackmon,* 284 N.C. 1, 10, 199 S.E. 2d 431, 437 (1973) :

> "There is neither evidence nor findings of fact to show that defendant expressly waived his right to counsel, either in writing or orally, within the meaning of *Miranda* on which our decision in *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971), is based. 'An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given.' *Miranda v. Arizona, supra.* Silence and waiver are not synonymous. 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' *Carnley v. Cochran,* 369 U.S. 506, 8 L.Ed. 2d 70, 82 S.Ct. 884 (1962)."

However, the State contends that under *State v. Beasley,* 10 N.C. App. 663, 179 S.E. 2d 820 (1971), a case factually similar to this case, no *Miranda* warnings were necessary. In *Beasley,* however, defendant was not in custody at the time of the questioning and his incriminating statement was made as a result of an on-the-scene investigation, an exception specifically recognized in *Miranda.* Hence, *Beasley* is distinguishable from the present case, for as stated in *Lowe v. United States,* 407 F. 2d 1391 (9th Cir. 1969) :

> "The questioning of a driver of a stopped car on an open highway by one policeman, without more, cannot be characterized as a 'police dominated' situation or as 'incommunicado' in nature. . . .
>
>        *     *     *
>
> " . . . This general on the scene questioning is a well accepted police practice; it is difficult to imagine the police warning every person they encounter of his *Miranda* rights. This is why the opinion in *Miranda* expressly ex-

cluded 'on-the-scene questioning' from the warning require-
ments. . . . "

See *State v. Sykes, supra.*

**[3]** The Court of Appeals in *Beasley* quoted with approval
from *State v. Macuk,* 57 N.J. 1, 15-16, 268 A. 2d 1, 9 (1970), as
follows:

> "Now, with the problem squarely before us, we are
> of the opinion that, in view of the absence of any indication
> to the contrary by the United States Supreme Court, the
> rules of *Miranda* should be held inapplicable to all motor
> vehicle violations."

We do not approve this language. This Court in *State v. Hill,*
277 N.C. 547, 553, 178 S.E. 2d 462, 466 (1971), stated: "One
who is detained by police officers under a charge of driving
while under the influence of an intoxicant has the same consti-
tutional and statutory rights as any other accused," citing *State
v. Morris,* 275 N.C. 50, 165 S.E. 2d 245 (1969). In *State v.
Strickland,* 276 N.C. 253, 261, 173 S.E. 2d 129, 134 (1970), a
case in which defendant was charged with operating a motor
vehicle while under the influence of intoxicating liquor, Justice
Branch, speaking for the Court, stated:

> "It is the law in this State 'that in-custody statements
> attributed to a defendant, when offered by the State and
> objected to by the defendant, are inadmissible *for any
> purpose* unless, after a *voir dire* hearing in the absence of
> the jury, the court, based upon sufficient evidence, makes
> factual findings that such statements were voluntarily and
> understandingly made by the defendant after he had been
> fully advised as to his constitutional rights.' *State v. Catrett,*
> 276 N.C. 86, 171 S.E. 2d 398 [Citations omitted.]"

See *State v. Sykes, supra;* Annot., 25 A.L.R. 3d 1076 (1969).

> In *Miranda* the Supreme Court adopted the following
> rule:

> "At the outset, if a person in custody is to be subjected
> to interrogation, he must first be informed in clear and
> unequivocal terms that he has the right to remain silent. . . .
> The warning of the right to remain silent must be accom-
> panied by the explanation that anything said can and will
> be used against the individual in court. . . . [T]he right

to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. . . . [T]he need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires. . . . Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. . . . As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. . . . " 384 U.S. at 467-71.

The Supreme Court of the United States in *Miranda* does not limit the rights it sets forth to persons *charged* with felonies or misdemeanors, and neither does this Court in *State v. Strickland, supra;* rather both Courts relate those rights to any individual being subjected to custodial interrogation concerning a criminal charge. See *Argersinger v. Hamlin,* 407 U.S. 25, 32 L.Ed. 2d 530, 92 S.Ct. 2006 (1972). We hold, therefore, that after the defendant in this case was arrested and placed in the patrol car, the rules of *Miranda* were applicable to him just as any other person in custody on a criminal charge.

For the reasons stated, the decision of the Court of Appeals is reversed, and the cause is remanded to that court with direction to award a new trial to be conducted in accordance with the principles herein set forth.

Reversed and remanded.