STATE OF NORTH CAROLINA v. JOHN LEE EDWARDS

No. 106

(Filed 26 November 1974)

1. **Jury §§ 2, 5— motion to summon jurors from another county — motion to exclude jurors from community where crime occurred — publicity of prior trials**

   In this first degree murder prosecution, the trial court did not abuse its discretion in the denial of defendant's motions for the summoning of a jury from another county and, alternatively, for the exclusion from the jury panel of residents of the community in which the offense occurred, made on the ground that two former trials of defendant for the same crime were given extensive newspaper pub-

licity and were the subject of general conversation in the community, where the record contains no evidence as to the extent or nature of such publicity, nothing in the record indicates that any juror at the third trial heard any discussion of the case, saw any newspaper account of it or had formed an opinion as to defendant's guilt, and it does not appear in the record that defendant exhausted his peremptory challenges or that any challenge for cause by him was not allowed. G.S. 9-12(a).

2. **Homicide § 21— first degree murder — sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for first degree murder where it tended to show that the victim was strangled to death, that defendant was left by his companions afoot, in the vicinity of the victim's home after midnight, less than 12 hours before her body was discovered, and that defendant told his girl friend that he entered the victim's home through a window and, in an attempt to rape her, choked her until she stopped struggling and thereafter stole coins from her dresser drawer.

3. **Criminal Law § 112— instructions — reasonable doubt**

Unless he is requested to do so, the trial judge is not required to define "reasonable doubt" in his instructions to the jury and, if he undertakes to define it, he is not limited to the use of an exact formula.

4. **Criminal Law § 112— instructions — reasonable doubt as possibility of innocence — harmless error**

The trial court's definition of reasonable doubt as a possibility of innocence, though disapproved, was favorable to defendant and did not constitute prejudicial error.

5. **Criminal Law § 114— statement of contentions — no expression of opinion**

In a prosecution for first degree murder, the trial court did not express an opinion that the jury should find that the victim was killed in stating the State's contention that defendant was attempting to steal goods or moneys or to commit rape "at the time of the killing of" the victim.

6. **Criminal Law § 87— allowance of leading questions**

The trial court did not err in allowing witnesses for the State to testify in response to leading questions by the prosecuting attorney.

7. **Criminal Law § 135; Homicide § 31— first degree murder — commission prior to 18 January 1973 — life sentence**

The proper sentence to be imposed upon one convicted of murder in the first degree, committed prior to 18 January 1973, is a sentence to imprisonment for life.

8. **Criminal Law § 77— confession to girl friend — admissibility**

In a prosecution for first degree murder, there was no error in the admission of the testimony of defendant's girl friend who recounted to the jury the defendant's confession to her that he strangled the victim in an attempt to commit a rape upon her.

APPEAL by defendant from *Kivett, J.*, at the 3 June 1974 Session of ORANGE.

Upon an indictment, proper in form, the defendant was convicted of murder in the first degree and was sentenced to imprisonment for life, the offense having been committed prior to the decision in *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19.

The defendant contends the trial court erred: (1) In its denial of his motions for the summoning of a jury from another county and, alternatively, for the exclusion from the jury panel of residents of the Carrboro community, in which the offense occurred; (2) in its denial of his motion for a judgment as of nonsuit; (3) in its instruction to the jury as to the meaning of reasonable doubt; (4) in its alleged expression of an opinion in its instructions to the jury; and (5) in its admission of evidence, over objection, in response to alleged leading questions by the prosecuting attorney.

The evidence for the State was to the following effect:

Mrs. Dora Lloyd, 83 years of age, lived alone near the intersection of Highway 54 and an undesignated road, west of Carrboro. At approximately 11:30 a.m. on Sunday, 5 September 1971, a neighbor went to her home carrying a lunch tray for Mrs. Lloyd. Receiving no response to her knock, the neighbor investigated, entering the house through the back door by pushing aside a stool which held the door. She found Mrs. Lloyd lying in bed dead. The covers were disarrayed, her head was in an abnormal position, her hair disheveled, her neck bruised and her face mottled. The bedroom light was turned on and the dial of the telephone beside the bed had been pulled off.

The cause of death, in the opinion of the Chief Medical Examiner for the State, who performed an autopsy, was manual strangulation. He found bruises over the body, two fractured ribs and superficial tears and hemorrhage in the genital area.

The deputy sheriff, who went to the house in response to the report of the finding of Mrs. Lloyd's body, observed a dresser drawer open and the contents thereof disarranged.

The defendant spent the evening prior to the discovery of Mrs. Lloyd's body riding about in an automobile with a female relative, who was a witness for the State, and three other companions. At some time after midnight, the car stopped at the intersection of Highway 54 and the road leading to Mrs. Lloyd's

house and the defendant got out. His companions drove away and left him there.

Susan Dark, a witness for the State, and the defendant were both confined in the Orange County jail for 55 days. Their respective cells, though separated by a metal door, were so located that the occupants could engage in a conversation easily. Once or twice a week the defendant, going to make a telephone call or to confer with his lawyer, would pass by Susan Dark's cell and converse with her. They also exchanged letters, those received by Susan Dark being subsequently lost in a fire. He proposed marriage to her. She accepted the proposal on condition that he tell her the truth about the killing of Mrs. Lloyd. He, thereupon, told Susan Dark that he got out of the automobile and left his companions "at Mrs. Lloyd's road," went to her house, entered through a window, struggled with her in an attempt to rape her, in which struggle she bit him on the arm and, thereupon he choked her until she stopped struggling. He further told Susan Dark that he then tore up the telephone and put the telephone cord around Mrs. Lloyd's neck, perpetrated certain indignities to her person and then removed some coins from a drawer. At the time of her testimony, Susan Dark was serving a term in the Women's State Prison for forgery. She had then served six months of her sentence and was hoping to get a parole.

The defendant did not testify but called as his witness Dr. Ladislaw Peter, a psychiatrist serving on the staff of Cherry Hospital. Dr. Peter testified that he examined the defendant at the hospital in the Fall of 1971 and that, in his opinion, the defendant, though mentally retarded to a mild degree, showed no evidence of insanity. He further testified that the defendant, in the course of Dr. Peter's examination of him, denied completely that he killed Mrs. Lloyd. Subsequently, while awaiting the trial which resulted in the conviction and judgment from which the defendant now appeals, he denied to Dr. Peter that he had ever made any statements to Susan Dark. In the opinion of Dr. Peter, based upon his personal observation of the defendant, the defendant's mental condition at the time of the trial now in question was the same as it was when Dr. Peter examined him in the Cherry Hospital.

*James H. Carson, Jr., Attorney General, by Rafford E. Jones, Assistant Attorney General, for the State.*

*F. Lloyd Noell for defendant.*

LAKE, Justice.

[1]   There is no merit in the defendant's assignment of error directed to the denial of his motion for the summoning of jurors from another county, and the denial of his alternative motion that no jurors be chosen from the Carrboro area of Orange County.

G.S. 9-12(a) provides, "On motion of any party or the State, or on his own motion, any judge of the superior court, *if he is of the opinion that it is necessary in order to provide a fair trial in any case, * * * may* order as many jurors as he deems necessary to be summoned from any county or counties in the same judicial district as the county of trial or in any adjoining judicial district." (Emphasis added.) The statute, obviously, places this matter in the sound discretion of the judge of the Superior Court. *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 641, 157 S.E. 2d 386; *State v. Porth,* 269 N.C. 329, 336, 153 S.E. 2d 10; *State v. Allen,* 222 N.C. 145, 22 S.E. 2d 233. The record discloses no basis whatever for finding that the denial of either of these motions constituted an abuse of discretion by the trial judge.

The defendant was twice before tried and convicted of this offense, each of which former convictions was set aside and a new trial ordered by this Court. *State v. Edwards,* 284 N.C. 76, 199 S.E. 2d 459; *State v. Edwards,* 282 N.C. 201, 192 S.E. 2d 304. In each instance, the ground upon which the new trial was ordered was the admission in evidence, over objection, of the defendant's confession to police officers, obtained through interrogation which this Court deemed improper. In the third trial, now before us for review, the defendant's confession to the officers was not introduced in evidence or in any way mentioned in the presence of the jury.

In support of his motions for the summoning of a special venire from another county, and alternatively, for the exclusion of prospective jurors from the Carrboro area, the defendant contends that the former trials were given extensive newspaper publicity and were the subject of general conversation in Orange County. The record contains no evidence whatever as to the extent or nature of such publicity and nothing in the record indicates that any juror at the third trial heard any discussion of the case, saw any newspaper account of it or had in any way formed an opinion concerning the defendant's guilt. The record

does not contain a transcript of the voir dire examination of any juror. It does not appear in the record that the defendant exhausted his peremptory challenges or that any challenge for cause by him was not allowed.

[2]   There was no error in the denial of the defendant's motion for a judgment as of nonsuit (referred to in the defendant's brief as a motion for a directed verdict of not guilty) made at the close of the State's evidence and renewed at the close of all the evidence.

It is elementary that upon such a motion the trial judge is required to take the evidence for the State as true, to give to the State the benefit of every reasonable inference to be drawn therefrom and to resolve in the favor of the State all conflicts, if any, therein. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156; *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Overman,* 269 N.C. 453, 468, 153 S.E. 2d 44; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728. There is in the record abundant evidence to support findings that Mrs. Lloyd was murdered, that the crime was perpetrated with brutal cruelty, that the defendant was left by his companions, afoot, in the vicinity of Mrs. Lloyd's home after midnight, less than 12 hours before her body was discovered, and that the defendant told his girl friend that he entered Mrs. Lloyd's home through a window and, in an attempt to commit rape upon her, choked her until she stopped struggling and thereafter stole coins from her dresser drawer. Thus, the evidence for the State was sufficient to support a verdict that the defendant was guilty of the offense with which he was charged, and the denial of the motion for judgment as of nonsuit was proper.

There was no prejudicial error in the court's instruction to the jury concerning the meaning of reasonable doubt. After instructing the jury that the State must prove the defendant guilty beyond a reasonable doubt, the court said:

> "When I speak of a reasonable doubt, I mean a possibility of innocence based on reason and common sense arising out of some or all of the evidence that has been presented, or lack of evidence, as the case may be. It is not a vain, imaginary, fanciful or mere possible doubt, because everything relating to human affairs is open to some possible or imaginary doubt, nor is it a doubt suggested by the in-

genuity of counsel or by your own ingenuity not legitimately warranted by the evidence, nor is it one born of merciful inclination or disposition to permit the defendant to escape the penalty of the law, or one prompted by sympathy for him or those connected with him. If after weighing and considering all of the evidence you are fully satisfied and entirely convinced of the defendant's guilt, you will be satisfied beyond a reasonable doubt. On the other hand, if you have any doubt based on reason and common sense, arising from the evidence in the case, or lack of evidence, as to any fact necessary to constitute guilt, and cannot say that you have an abiding faith to a moral certainty in the defendant's guilt, you would then have a reasonable doubt and it would be your duty to give the defendant the benefit of that doubt and to find him not guilty."

[3]  The term "reasonable doubt" is more easily understood than defined. Unless he is requested to do so, the trial judge is not required to define "reasonable doubt" in his instructions to the jury and, if he undertakes to define it, he is not limited to the use of an exact formula. *State v. Shaw,* 284 N.C. 366, 200 S.E. 2d 585; *State v. McClain,* 282 N.C. 396, 193 S.E. 2d 113. The instruction here given is in substantial accord with definitions heretofore approved by this Court. See: *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133, and cases there cited; *State v. Schoolfield,* 184 N.C. 721, 114 S.E. 466.

[4]  In *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745, we considered a charge containing the first sentence of the one here given, the sentence to which the present defendant's assignment of error is specifically directed. We disapproved the use of the phrase "possibility of innocence" as synonymous with "reasonable doubt." We concluded, however, that this was an instruction more favorable to the defendant than that to which he was entitled to and the error was, therefore, not prejudicial. We adhere to that view.

[5]  The defendant contends that, in violation of G.S. 1-180, the trial judge improperly expressed an opinion in the following portion of his instructions:

"The State contends and the defendant denies that from the evidence which the State has presented you should find in this case beyond a reasonable doubt that the defendant entered the house of Mrs. Lloyd with the intention

either to steal the goods or monies of Mrs. Lloyd or to rape her, with that intention at that time, one or the other or both and further the State contends and the defendant denies that the defendant was going about one or the other felony or attempting one or the other of the two felonies, *at the time of the killing of Mrs. Lloyd* * * * ." (Emphasis added.)

The defendant contends that the italicized portion of this instruction was an expression of an opinion by the court that Mrs. Lloyd was killed. We find no merit in this assignment of error. We think it obvious that the court was merely stating the contentions of the parties and it is inconceivable that the jury would otherwise so construe the statement. No error in this statement of contentions was called to the attention of the court at the time. "[I]t is a general rule that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal." *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839. It is totally unrealistic to characterize the above quoted instruction as an expression of an opinion by the court that the jury should find, as a fact, that Mrs. Lloyd was killed. Both before and after the instruction in question, the court plainly instructed the jury that in order for it to find the defendant guilty, it must find beyond a reasonable doubt that the defendant intentionally choked Mrs. Lloyd and thereby proximately caused her death.

[6] The defendant's final contention is that in several specified instances the court, over objection, permitted witnesses for the State to testify in response to leading questions by the prosecuting attorney. It would serve no useful purpose to examine each of these alleged errors separately. In some instances, the questions were not leading. In others, it elicited only repetition of previous testimony. In no instance do we find prejudicial error. "Traditionally the rulings of the judge on the use of leading questions are discretionary." Stansbury's North Carolina Evidence, Brandis Revision, § 31, p. 85. We find no merit in this assignment of error.

[7] G.S. 14-17 provides, "A murder which * * * shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree." The proper sentence to be imposed

upon one convicted of murder in the first degree, committed prior to 18 January 1973, is a sentence to imprisonment for life. *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19.

[8]　Three times this defendant has been convicted of the murder in the first degree of Mrs. Lloyd. Twice this Court has set aside the conviction and granted a new trial for error in the admission of evidence. At the third trial, which is involved in the present appeal, those errors were not repeated and the record discloses no other error prejudicial to the defendant so as to entitle him to a new trial. There was no error in the admission of the testimony of the defendant's girl friend, Susan Dark, who recounted to the jury the defendant's confession to her that he strangled Mrs. Lloyd in an attempt to commit rape upon her. The credibility of this evidence was for the jury. The witness was subjected to extensive cross-examination by his able court-appointed counsel, experienced in the practice of criminal law, who represented him at all three trials. In an effort to discredit the testimony of this witness, the defendant's counsel properly developed in detail her own criminal record. The jury, nevertheless, believed her testimony concerning the defendant's statement to her. It was the proper function of the jury to determine the credibility of her testimony.

No error.