STATE OF NORTH CAROLINA v. JUNIUS CARROLL BOYD

No. 763SC432

(Filed 3 November 1976)

1. **Criminal Law § 75— statements prior to Miranda warnings — no improper custodial interrogation**

    The trial court in a second-degree murder and assault prosecution did not err in finding that statements made by defendant to a police officer directing the officer to the scene of the crime where the victims lay and statements made after the officer discovered the victims were not made as the result of an in-custody interrogation, but were voluntary, and no Miranda warning was necessary; moreover, the officer's failure to advise defendant of his rights after placing him in custody was not prejudicial to defendant where there was no evidence of any question, answers or interrogation going on after that point in time until defendant was informed of his rights.

2. **Constitutional Law § 37; Criminal Law § 75— self-incrimination and right to counsel — waiver of rights**

    A person accused of a crime, capital or otherwise, may orally or in writing voluntarily waive his constitutional privilege against self-incrimination and his right to legal counsel, and by virtue of G.S. 7A-457(c) this applies to indigents as well. Evidence was sufficient to support the trial judge's finding in this case that defendant's oral waiver was given freely, voluntarily, effectively and understandingly.

3. **Assault and Battery § 14; Homicide § 21— second degree murder and assault — sufficiency of evidence**

    Evidence in a second degree murder and assault prosecution was sufficient to be submitted to the jury where it tended to show that defendant called the police, directed police to the scene of the killing, made certain incriminating statements at the scene and later gave police a statement; the assault victim identified defendant as the attacker; and blood in the clothing worn by defendant at his arrest matched the blood of the homicide victim.

APPEAL by defendant from *Rouse, Judge.* Judgment entered 29 January 1976 in Superior Court, PITT County. Heard in the Court of Appeals 11 October 1976.

By separate indictments, proper in form, defendant was charged with (1) first-degree murder of Norvella Wilson and (2) assault of James Green with a deadly weapon with intent to kill inflicting serious injury. At the trial the solicitor elected not to proceed on the charge of first-degree murder but to try the defendant for second-degree murder.

The State offered evidence tending to show that shortly after 1:00 a.m. on 7 September 1975 George Merritt, a Greenville policeman, was summoned to the R. B. Lounge, where he saw defendant. Defendant said that he wanted to show Merritt where some people had been beaten up, and he directed Merritt to a house at 407 Cadillac Street. When Merritt walked into the house, he found Norvella Wilson and James Green lying on the floor in a pool of blood. Defendant began walking rapidly away from the house, and Merritt stopped him and put him in the patrol car. Shortly thereafter, the officer took the defendant to the hospital and later to the police station. At the police station defendant's clothes were removed, and they were found to be heavily stained with blood which was analyzed by a chemist and found to be of the same blood group as Mrs. Wilson's blood. Defendant was advised of his constitutional rights at the hospital and again later at the police station. While at the station, he made a statement in which he said that at about 11:30 that night he went to the house at 407 Cadillac Street and found Green and Mrs. Wilson arguing. Green angrily accused defendant of engaging in a sexual relationship with Mrs. Wilson, and he struck at defendant. Green and defendant fought for a long time, and defendant hit Green with a shoe, while Green hit defendant with a table and other objects. During the fight defendant accidentally struck Mrs. Wilson with a shoe. At some time while he was at 407 Cadillac Street, defendant had intercourse with Mrs. Wilson in Green's presence. This enraged Green, and he assaulted Mrs. Wilson with a stick and a shoe.

James Green testified for the State that the defendant came to 407 Cadillac Street on 7 September 1975 and attacked Green with a stick and knocked him out. Green's skull, jaw and chin were broken, and he lost all his teeth. The State's evidence tended to show that Mrs. Wilson died before 11:00 a.m. on September 7. An autopsy showed that she had suffered lacerations and bruises of the face, shoulder, abdomen, thighs, lower legs, and pelvic area, and two of her ribs were broken. In the

opinion of the medical examiner, her death was caused by "blunt force trauma to head and pelvis."

Before admitting testimony concerning the statements made by defendant to Officer Merritt and the statement he made at the police station, the court held voir dire hearings to determine the admissibility of this testimony. The State offered evidence on voir dire tending to show that when Merritt went to the R. B. Lounge, defendant came out to his car, told Merritt that he wanted to show him where some people were hurt, got into Merritt's car, and directed Merritt to 407 Cadillac Street. Merritt did not question defendant at all. At the hospital, defendant was advised of his rights and was asked whether he understood them. After answering affirmatively, he was then asked whether he desired an attorney and he answered: "That is my mama." He was not questioned any further at that time. Later at the police station, he was again advised of his rights and said that he understood them, desired to make a statement, and did not want an attorney. He then made his statement. The court held that defendant's statements to Merritt and his statements at the police station were admissible.

Defendant testified that on September 7 he went to 407 Cadillac Street and found Green and Mrs. Wilson there arguing. He asked Mrs. Wilson if he could lie down on the bed, because he suffers from epilepsy and could tell that he was about to have a seizure. Mrs. Wilson said that he could lie down but then she approached him and made sexual advances to him. When Green saw what was happening, he began arguing with defendant and Mrs. Wilson, and he struck defendant with some object. Defendant and Green fought for some time, and then defendant left. During the fight each of them struck Mrs. Wilson accidentally, but when defendant left she did not seem to be seriously injured.

The jury found defendant guilty of second-degree murder and assault with a deadly weapon inflicting serious injury, and a prison sentence was imposed.

*Attorney General Edmisten, by Associate Attorney Nonnie F. Midgette, for the State.*

*Richard Powell, for the defendant appellant.*

MARTIN, Judge.

[1] In his first assignment of error, the defendant objects to the trial judge's finding that certain statements made by the defendant were not made as the result of an in-custody interrogation and that under the circumstances the statements were voluntary and no *Miranda* warning was necessary.

The facts relevant to this assignment of error are that Officer Merritt, in response to a call, went to the R. B. Lounge to meet a person named "Pee Wee" who was to show him where a rescue was needed. At that time, the defendant, Pee Wee, came out and voluntarily made certain statements to the Officer. Based on these statements, the officer went to a residence where he found the two alleged victims. The defendant rode with the officer to this residence and during this period of time he made certain statements. Further, he made a statement after the officer discovered the alleged victims. At this time, the defendant was placed in the officer's car. The defendant was not informed of his rights until later at the hospital and again shortly thereafter at the jail.

Defendant contends that these statements were elicited before he had been informed of his rights as guaranteed by *Miranda* and that the statements should have been excluded. More specifically, he argues that Officer Merritt should have read him his rights as soon as he was placed in the patrol car. It is important to note, however, that *Miranda* is concerned only with in-custody interrogation. See *State v. Lawson,* 285 N.C. 320, 204 S.E. 2d 843 (1974). In the *Lawson* case, the North Carolina Supreme Court went on to say that *"Miranda* warnings and waiver of counsel are required when and only when a person is being subjected to 'custodial interrogation'; that is, 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" (Citations omitted.) *State v. Lawson, supra* at 323, 204 S.E. 2d at 845.

In the instant case, the defendant was neither in custody nor had he been arrested when he made the statements to Officer Merritt. In addition, there is no evidence whatsoever that he was probed or questioned when he made the statements. The facts indicate that he was merely voluntarily and freely providing information to the police about an emergency situation and he was not a suspect. Since he was not deprived of his

freedom of action in any significant way, he was not, at that point in time, entitled to the *Miranda* warnings. Although it is arguable that the defendant was in custody after being placed in the patrol car, there is no evidence of any questions, answers, or interrogation going on after that point in time until he was informed of his rights. The officer's failure to advise the defendant of his rights after placing him in the car was, therefore, not prejudicial.

The defendant further contends that the trial judge erred when he ruled that the defendant's statements made at the hospital and later at the police station "were made voluntarily, knowingly and understandingly." The record discloses that when advised of his rights while at the hospital, defendant said he understood. He made no further statements at that time other than a statement implying that his mother was his lawyer. Later, at the police station, he was again advised of his rights and he again said he understood and that he wanted to talk. The record supports the trial judge's findings and these statements were properly admitted into evidence.

The defendant's first assignment of error is therefore overruled.

In his second assignment of error, the defendant contends that the trial court committed prejudical error by admitting the defendant's statements in view of the fact that there was no waiver signed by the defendant. The defendant bases this exception on the fact that there was no waiver written or signed by the defendant.

[2] We have long recognized that a person accused of a crime, capital or otherwise, could orally or in writing voluntarily waive his constitutional privilege against self-incrimination and his right to legal counsel, and by virtue of G.S. 7A-457(c) this applies to indigents as well. See *State v. Chance*, 279 N.C. 643, 660, 185 S.E. 2d 227, 238 (1971).

In the instant case, the trial judge conducted a voir dire hearing in the absence of the jury and found that an oral waiver was freely, voluntarily, effectively, and understandingly given. There was ample competent evidence to sustain the trial judge's finding.

The remainder of defendant's arguments under the second assignment of error have been reviewed and are without merit. The second assignment of error is therefore overruled.

State v. Boyd

**[3]** In a third assignment of error, the defendant contends and argues on this appeal that the trial judge committed prejudicial error by failing to grant defendant's motions for nonsuit when made at the close of the State's evidence and then when renewed at the close of all the evidence. We disagree.

It is well settled that upon a motion for nonsuit

" . . . the trial judge is required to take the evidence for the State as true, to give to the State the benefit of every reasonable inference to be drawn therefrom and to resolve in the favor of the State all conflicts, if any, therein." (Citations omitted.) *State v. Edwards*, 286 N.C. 140, 145, 209 S.E. 2d 789, 792 (1974).

The State's evidence, in the instant case, tended to show that the defendant called the police, directed the police to the scene of the tragic killing, made certain incriminating statements at the scene, later gave the police a statement; that one of the victims identified the defendant as the attacker; and that blood-stained clothing taken from the defendant tended to incriminate him. This evidence, along with other evidence, taken as true in a light most favorable to the State, is sufficient to survive the defendant's motions for judgment as of nonsuit.

The defendant's third assignment of error is therefore overruled.

The defendant had a fair and impartial trial free of prejudicial error.

No error.

Chief Judge BROCK and Judge VAUGHN concur.