STATE OF NORTH CAROLINA v. RANDOLPH NICHOLS, ALIAS
RONNIE JOHNSON

No. 7716SC232

(Filed 20 July 1977)

**Kidnapping § 1; Rape § 5— sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for kidnapping and first degree rape where it tended to show that defendant stopped by the home of the seventeen year old victim's aunt at 4:00 a.m. and asked for water for his overheated car; after being given water, defendant displayed a sawed-off rifle and forced his way into the home; defendant then took the victim at the point of the gun to a secluded spot and forced her to have intercourse with him; a medical examination revealed that the victim had had intercourse on the day in question and that she was a virgin; and defendant gave the police a written statement admitting the offenses.

APPEAL by defendant from *Canaday, Judge*. Judgment entered 15 December 1976 in Superior Court, ROBESON County. Heard in the Court of Appeals 30 June 1977.

Defendant was indicted for felonious kidnapping and first degree rape. Prior to trial, defendant moved to suppress the introduction of a written statement made by him following his arrest on the ground that it was not voluntarily made. A *voir dire* was held during trial after which the court ruled the statement admissible. At trial, the State's evidence tended to show the following: At 4:00 a.m. on 2 October 1976 a man knocked on the front door at the home of Flora Ford, the aunt of Connie McQueen. Miss McQueen, who was 17 years old at the time, went with her aunt to answer the door and the man they found there identified himself as the relative of one of Ms. Ford's neighbors. He then asked Ms. Ford for some water for his overheated vehicle and Miss McQueen brought a bucket of water which the man put in his car. When Ms. Ford opened the door to take back the bucket, the man had a gun and he forced his way in. He then grabbed Miss McQueen at gunpoint, forced her out of the house and into his car, and drove her down a farm road. Miss McQueen attempted to jump out of the car but the man grabbed her and she also took the man's gun but was unable to operate it. He stopped the car and made Miss McQueen get in the back seat where he raped her while still holding the gun at her side. The man left her on the road and she ran to a nearby house for help. An examination of Miss

State v. Nichols

McQueen revealed extensive bleeding from a torn hymen and the presence of sperm indicating recent intercourse. She further testified that she had never before had intercourse and the doctor who examined her stated his opinion that she was a virgin. The investigating police found distinctive tire marks in front of Miss McQueen's house and found the same tracks at the home of J. P. Melvin. A lady at the Melvin residence stated that the defendant had been there the night before. Defendant was then arrested, informed of the nature of the charge, and advised of his rights twice. Defendant signed a waiver and made an oral statement which he reduced to writing. In the statement he admitted taking a girl from her house at 4:00 a.m., driving to a place in Marietta, having intercourse with her and releasing her but stated that the pistol was a blank one and had been thrown away after leaving the girl. Upon further questioning defendant admitted that he had not thrown the gun away and went with the officers to his house where he gave them a sawed-off .22 rifle. Miss McQueen, her sister Kay, and Ms. Ford all identified the defendant as the man who came to their house at 4:00 in the morning and took Miss McQueen, and both Miss McQueen and her sister identified the .22 rifle as the gun which he had with him.

Defendant testified that on the night in question he was out listening to music and drinking at several different places in North Carolina and South Carolina with his friend Lennox Davis. At the time, he was driving his brother's car and the sawed-off rifle was in the car. He drove Lennox to his home at about 4:30 a.m. and then returned to his own home and went to bed. He said that he did not stop off on the way at the home of Ms. Ford and kidnap and rape Connie McQueen. He further testified that he wrote the confession for police as the result of promises of leniency by them and that he had never been convicted of using profane language in public, assault with a deadly weapon, or non-support of an illegitimate child. Following his own testimony, defendant presented a written motion to quash, actually a motion for mistrial, on the basis of conduct of the district attorney during cross-examination of defendant and the motion was denied. Defendant also moved for dismissal of his court-appointed attorney, but this motion was also denied because not timely made and because of the adequate preparedness and experience of defendant's counsel. Nancy Davis, sister of Lennox Davis, then testified that he returned home at 4:35

a.m. on the morning of the alleged rape. On cross-examination, she denied having a conversation with Clemnora Oxendine during a recess in which she stated that defendant had committed the rape and should have killed the victim. Joyce Cross, defendant's niece, testified that defendant returned home at 4:50 a.m. on the morning of the alleged rape. On rebuttal, Clemnora Oxendine testified that during a recess, in response to her own comment that "that damn liar is finally off the stand," Nancy Davis stated: "Girl, you don't know nothing about that case. . . . Yeah, he raped her and he ought to killed her. . . . That's the way you all damn Indians is taking up for the white folks."

Defendant was convicted by a jury of both offenses and sentenced to consecutive terms of 20 and 50 years. He appealed.

*Attorney General Edmisten by Associate Attorney Donald W. Grimes, for the State.*

*I. Murchison Biggs, P.A., by Robert D. Jacobson, for the defendant.*

MARTIN, Judge.

The defendant assigns as error the court's denial of his motion for judgment as of nonsuit. Upon such a motion the trial judge is required to

" . . . take the evidence for the State as true, to give to the State the benefit of every reasonable inference to be drawn therefrom and to resolve in the favor of the State all conflicts, if any, therein." (Citations omitted.) *State v. Edwards,* 286 N.C. 140, 145, 209 S.E. 2d 789, 792 (1974).

The State's evidence, taken in this light, tends to show the following: On 2 October 1976, the defendant appeared at the residence of Connie McQueen in the early morning hours. He knocked on the door of her residence claiming that his car had overheated and that he needed water. After being given water, he displayed a .22 caliber sawed-off rifle and forced his way into the house. He then took Connie McQueen by force and against her will to a secluded spot on a farm road near Marietta, North Carolina. After several futile attempts to get away, Miss McQueen was forced to remove her clothing and, at gunpoint, the defendant had intercourse with her. A medical examination

revealed that Miss McQueen had had intercourse on the day in question and that she was a virgin. The defendant was later picked up by the police and after being given his constitutional rights, gave a written statement admitting the offenses. This evidence, taken as true, supports a conclusion that the denial of defendant's motion for nonsuit was proper.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

Defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and ARNOLD concur.