**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Jeffrey Lynn FIELDS, Defendant and Appellee.**

**Crim. No. 710.**

Supreme Court of North Dakota.

June 26, 1980.

Michael J. Maus, Asst. State's Atty., Dickinson, for plaintiff and appellant State of North Dakota.

Vince H. Ficek, Dickinson, for defendant and appellee.

VANDE WALLE, Justice.

The State of North Dakota appeals from an order of the Stark County court of increased jurisdiction entered January 9, 1980, granting a motion of Jeffrey Lynn Fields to suppress evidence. We affirm in part and reverse in part.

On November 27, 1979, Deputy Sheriff Duane Knudson was informed by State Radio that there had been a car accident in Gladstone, North Dakota, and that the driver had been taken to a hospital in Richardton, North Dakota. Deputy Knudson went to investigate the accident scene. He then contacted Darrell Heinen, Richardton city police chief, and requested him to "go to the hospital, and, if he felt it was necessary, to obtain a blood alcohol test from the driver."

Officer Heinen went to the hospital and, upon locating Fields, asked him if he was the driver of the car at the time of the accident. When Fields answered "yes," Officer Heinen asked him if he would submit to a blood-alcohol test. Fields agreed and he was placed under arrest for driving while under the influence of intoxicating liquor.[1] He was then informed of some of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A blood sample was then taken from Fields.

Later, Deputy Knudson arrived at the hospital and visited Fields in his room. He indicated his purpose in visiting Fields was to obtain information needed to complete the accident report form and to issue a citation for driving while under the influence of intoxicating liquor. No *Miranda* warnings were given to Fields by Deputy Knudson.

Prior to trial, Fields moved to suppress the results of the blood test and statements made by him to Officer Heinen and Deputy Knudson on the ground that he was deprived of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and equivalent provisions of the North Dakota Constitution.[2] The trial court held that Fields had not been fully advised of his *Miranda* rights and granted the motion to suppress the evidence. The State now appeals from that order.

At the threshold, we consider whether or not the State has the right to take this appeal. The State has only such right of appeal in a criminal action as is conferred by law. *State v. McEnroe*, 69 N.D. 445, 287 N.W. 817 (1939). In *State v. Iverson*, 219 N.W.2d 191 (N.D.1975), this court held that the State does not have the

---

1. Section 39–08–01, N.D.C.C., provides, in part:
    "1. No person shall drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if:

    "a. . . . .
    "b. He is under the influence of intoxicating liquor; . . . ."

2. See N.D.Const. §§ 13 and 18.

right to appeal from an order suppressing evidence where there is no statutory authority for such an appeal. Subsequent to that case, Section 29–28–07, N.D.C.C., was amended to allow appeals from suppression orders. Section 29–28–07 now provides, in part, that an appeal may be taken by the State from:

"5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

Fields, however, contends that even if there is statutory authority for this appeal, the State here has no right to take this appeal because it failed to file the required statement along with the notice of appeal. The notice of appeal was filed on January 14, 1980, but the statement of the prosecuting attorney was not filed until April 21, 1980. While we do not condone this delay in filing, we do not believe it warrants a dismissal, particularly where the defendant has not challenged the content of the statement but only the date of its filing. See *State v. Harris*, 286 N.W.2d 468 (N.D.1979); *State v. Kinn*, 288 Minn. 31, 178 N.W.2d 888 (1970).

However, our decision to allow the appeal should not be read as shifting to a defendant the burden of proving that the State could still reasonably prosecute without the suppressed evidence. Nor does it mean that in the future this court will not consider dismissing appeals for failure to file the prosecutor's statement with the notice of appeal.

We next consider if the trial court erred in suppressing Fields's answer to Officer Heinen's question as to whether or not Fields was driving the car at the time it was involved in the accident. The trial court suppressed Fields's answer on the ground that at the time the question was asked suspicion had focused on Fields as being the driver and as driving the vehicle in such a manner as to cause the accident. At that time, the trial court believed, it was incumbent upon the police officer to advise Fields of his right under *Miranda, supra,* to remain silent—the right not to answer any questions including the question whether or not he was driving the vehicle itself. Because the police officer failed to advise Fields of his rights before asking the question, the trial court held that the responses would be inadmissible into evidence.

█ It was the basis of the trial court's decision, and now argued by the defendant on appeal, that because suspicion had focused on Fields, he should have been informed of his *Miranda* rights prior to any questioning. We do not agree. Mere investigatory focus does not require the giving of the *Miranda* warnings.

Prior to *Miranda, supra,* the United States Supreme Court in *Escobedo v. Illinois,* 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977, 986 (1964), held:

"[T]hat where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution . . . and that no statement elicited by the

police during the interrogation may be used against him at a criminal trial."

The Supreme Court granted certiorari in *Miranda, supra,* to explore some of the problems not squarely decided in *Escobedo, supra,* "of applying the privilege against self-incrimination to in-custody interrogation, and to give concrete constitutional guidelines for law enforcement agencies and courts to follow." 384 U.S. at 441–442, 86 S.Ct. at 1611, 16 L.Ed.2d at 705.

In *Miranda,* the Supreme Court held that the prosecution may not use statements stemming from the custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effected to secure the privilege against self-incrimination.[3] The Court defined "custodial interrogation" as questioning initiated by law-enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. By way of footnote the Court explained that this is what it meant in *Escobedo, supra,* when it spoke of an investigation which had focused on an accused. Later United States Supreme Court cases also indicate that custody is the determinative factor in deciding if the *Miranda* warnings are required. In *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the Court considered the admissibility of certain statements made by a defendant, not in custody, to Internal Revenue agents. There, the Court, citing *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), and *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), held that it was the custodial nature of the interrogation that triggered the necessity for adhering to the specific requirements of *Miranda, supra.* The Court stated:

> "Although the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under

scrutiny, he hardly found himself in the custodial situation described by the *Miranda* Court as the basis for its holding. *Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" 425 U.S. at 347, 96 S.Ct. at 1616, 48 L.Ed.2d at 8.

In the more recent case of *Roberts v. United States,* —— U.S. ——, ——, 100 S.Ct. 1358, 1364–1365, 63 L.Ed.2d 622, 631 (1980), the Supreme Court, in considering the Fifth Amendment privilege against compelled self-incrimination, stated:

> "Although *Miranda's* requirement of specific warnings create a limited exception to the rule that the privilege must be claimed, the exception does not apply outside the context of the inherently coercive custodial interrogation for which it was designed."

In *State v. Iverson,* 187 N.W.2d 1 (N.D. 1971), *cert. denied* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971), this court did state:

> "Our reading of *Miranda* is not that every person questioned in the process of a criminal investigation must be given the *Miranda* warnings, but rather that these warnings must be given to any person who is suspected of having committed a crime, or upon whom the investigation is focused." 187 N.W.2d at 14.

This would seem to indicate that North Dakota has adopted a "focus" test to determine the application of *Miranda.* But this statement must be read in the context of that opinion. Prior to this statement this court discussed *Escobedo, supra,* and *Miranda, supra,* and noted that the Supreme Court in *Miranda* by footnote had indicated that it meant custodial interrogation when it spoke in *Escobedo, supra,* of an investigation which had focused on the accused.

---

3. As to the procedural safeguards to be employed, the Supreme Court stated: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–707.

Later North Dakota cases indicate that this court also meant custodial interrogation in *Iverson, supra,* when it stated that *Miranda* warnings must be given to a person suspected of having committed a crime or upon whom the investigation is focused.

In *State v. Metzner,* 244 N.W.2d 215 (N.D.1976), the defendant asserted that the police seizure of his boots violated his Fifth Amendment privilege against self-incrimination because he was not informed of his *Miranda* rights prior to the questioning that led to the officer's request that he produce his boots. It was the defendant's position that he should have been informed of his rights because the investigation, he believed, had already focused upon him when he was questioned. This court held:

"We are not persuaded by Metzner's argument that the investigation focused upon him, as that term is used in *Miranda,* before the officers were able to ascertain that the boot produced by Metzner was similar to the bootprint in the snow outside of Metzner's house. In addition, we are not persuaded that a 'custodial interrogation' took place when the police officer, as part of a routine investigation, asked Metzner questions about the footprints which led up to his door. There is a total absence of coercion present in the situation described in this case. The officers used no threat of force or threat of authority to induce Metzner to cooperate in their investigation. They did not request him to leave the house until after they had ascertained that the boots which Metzner himself produced were identical to the footprints which they had followed from the Lauer Repair Shop." 244 N.W.2d at 223.

We find further support for our belief that this court has adopted a "custody" test for determining the application of *Miranda* in the court's syllabus to *State v. Carmody,* 253 N.W.2d 415 (N.D.1977):

"3. Unless law enforcement officers give *Miranda* warnings before questioning a person in custody, and follow *Miranda* procedures during the course of any subsequent interrogation, any state-

ment made by the person in custody cannot, over his objections, be admitted into evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary."

Here, when Officer Heinen asked Fields if he was driving the car at the time of the accident, he was not in custody nor deprived of his freedom by the authorities in any significant way. His detention at the hospital resulted from medical advice, not from any action of the authorities. Officer Heinen contacted Fields at the hospital as part of the accident investigation. He went to check the condition of the driver and, if necessary, to have a blood-alcohol test conducted. Fields was not taken to the hospital by the officer but by a friend. Officer Heinen's question was asked at the hospital in the presence of this friend and a nurse on duty. In view of these facts, we conclude that Fields's answer was not the result of a custodial interrogation in a police-dominated atmosphere. Thus the failure to advise Fields of his *Miranda* rights prior to asking him if he was the driver of the car at the time of the accident does not make his answer inadmissible, and the trial court erred in suppressing it.

Our conclusion that these facts do not constitute "custodial interrogation," because the atmosphere and physical surroundings did not manifest restraint or compulsion, is supported by decisions of other jurisdictions which have been confronted with similar questions. *State v. Thomas,* 22 N.C.App. 206, 206 S.E.2d 390 (1974); *State v. Brunner,* 211 Kan. 596, 507 P.2d 233 (1973); *People v. Phinney,* 22 N.Y.2d 288, 292 N.Y.S.2d 632, 239 N.E.2d 515 (1968); *People v. Gilbert,* 8 Mich.App. 393, 154 N.W.2d 800 (1967).

In *People v. Phinney, supra,* the defendant had been involved in a one-car accident and taken to a hospital. A state trooper came upon the accident scene and after questioning witnesses went to the hospital where he found the defendant in the emergency room. The officer asked the defendant if he had been driving the car involved in the accident and, when the driver admit-

ted that he had, the officer gave him a traffic summons for speeding. The New York Court of Appeals held, without deciding whether or not *Miranda* applies to traffic violations, that there was no constitutional prohibition against the use of this admission because the facts showed that the defendant was not in the custody of the authorities at the time he made the statement. A similar conclusion was reached in *State v. Brunner, supra.* There, the defendant was convicted of involuntary manslaughter following a car accident. The defendant had been taken to a hospital and when contacted there by a police officer he admitted that he was the driver of the vehicle and that he had been drinking. On appeal the defendant alleged error in the introduction into evidence of admissions solicited from him and the results of a blood-alcohol test, but the Kansas court refused to suppress them. Although the defendant was suspected of being the driver of the car and of having driven it while under the influence of intoxicating liquor, the court found that the defendant was not "in custody" when questioned. As in the present case, the defendant's "detention" at that stage resulted purely from medical advice and not from any action on the part of the authorities. Because that was not a custodial interrogation, the Kansas court held the absence of a *Miranda* warning did not of itself render the defendant's statements inadmissible.

The State has also raised as error in this case the exclusion by the trial court of the blood-alcohol-test results. The trial court excluded the test results because it believed that without Fields's admission to being the driver, which the court considered was the result of improper questioning, there was no probable cause to arrest Fields for driving while intoxicated, nor to tests for intoxication.

■ We do not agree with the trial court, and reverse its decision to exclude the blood-test results. As stated earlier in this opinion, Officer Heinen's question to Fields was not improper. Because of Fields's answer, his eyes, his speech, and the nature of the accident, Officer Heinen had probable cause to arrest Fields for driving while intoxicated and to request Fields to submit to a test for intoxication.

■ As a final issue, we consider the State's contention that the trial court erred in suppressing statements made by Fields to Deputy Knudson at the time the accident report was completed. Although the record is not completely clear, it appears that the trial court suppressed these statements because Fields had not been fully informed of his rights before he was questioned.[4]

There can be no doubt that Fields was in custody when he was questioned by Deputy Knudson. By that time Officer Heinen had placed Fields under arrest and stayed near him until Deputy Knudson arrived. In most circumstances, a person subject to a custodial interrogation and questioned must be informed of his *Miranda* rights. The State, however, contends that the *Miranda* rule should not be applicable to arrests for traffic violations.

In support of this contention the State cites several cases, including *State v. Bliss*, 238 A.2d 848 (Del.1968); *State v. Macuk*, 47 N.J. 1, 268 A.2d 1 (1970); and *State v. Neal*, 476 S.W.2d 547 (Mo.1972), which in part relied upon the arguments outlined in *Macuk*. We have reviewed these decisions and do not find their reasoning totally persuasive. While *Miranda* may not be applicable to routine traffic offenses where a driver is detained no longer than is necessary for the issuance of a citation, we believe *Miranda* warnings should be given before questioning a person who is in custody or deprived of his freedom by the authorities for a more serious offense such as driving while intoxicated.

Our determination that *Miranda* is applicable to persons subject to custodial interro-

---

4. Because Officer Heinen failed to fully advise Fields of his *Miranda* rights at the time of his arrest, we need not consider whether or not a proper warning at that time would have been sufficient to allow the admission of statements made during the time Fields was questioned by Deputy Knudson.

gation after an arrest for driving while intoxicated is supported by decisions of other jurisdictions. *People v. Bartlett,* 82 Misc.2d 152, 368 N.Y.S.2d 799 (1975); *State v. Lawson,* 285 N.C. 320, 204 S.E.2d 843 (1974); *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971). In *State v. Lawson, supra,* the North Carolina court held:

> "The Supreme Court of the United States in *Miranda* does not limit the rights it sets forth to persons *charged* with felonies or misdemeanors, and neither does this Court in *State v. Strickland* [276 N.C. 253, 173 S.E.2d 129 (1970)], *supra* ; rather both Courts relate those rights to any individual being subjected to custodial interrogation concerning a criminal charge. . . . We hold, therefore, that after the defendant in this case was arrested and placed in the patrol car, the rules of *Miranda* were applicable to him just as any other person in custody on a criminal charge." 285 N.C. at 328, 204 S.E.2d at 848.

We affirm the decision of the trial court to suppress any statements made by Fields at the time he was questioned by Deputy Knudson.

■ However, our holding here does not mean that an individual may assert the right to remain silent when requested by an officer to submit to a blood-alcohol test, pursuant to Chapter 39–20, N.D.C.C., because the Fifth Amendment privilege against self-incrimination does not apply under these circumstances. If the person allows the test, to which he has already impliedly consented under Section 39–20–01, N.D.C.C.,[4] the results are not "testimoni-al" and may be admitted into evidence. *Schmerber v. Arizona,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Miller,* 146 N.W.2d 159 (N.D.1966).[5] Thus there is no impingement of Fifth Amendment rights in requiring a person to respond to an officer's request to submit to a blood-alcohol test.

■ Because an arrested person does not have the constitutional right to remain silent when asked whether or not he will submit to a blood-alcohol test, the officer, if he gives the *Miranda* warnings prior to asking the person to take the test, should inform the person that if he refuses to take the test, whether by silence or negative answer, his license is subject to suspension. This procedure may prevent the confusion that could result where a person is informed of his *Miranda* rights and then is asked whether or not he will submit to a blood test. *See generally Agnew v. Hjelle,* 216 N.W.2d 291 (N.D.1974).

The order of the trial court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

4. Section 39–20–01, N.D.C.C., provides:

"Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used."

5. If the person refuses the test, proof of this refusal could conceivably be considered testimonial evidence and subject to the safeguards of the Fifth Amendment, but we do not reach this issue because Section 39–20–08, N.D.C.C., prevents admitting proof of the refusal unless the person testifies first.