The STATE of North Dakota, Plaintiff and Appellant,

v.

Bradley Allen BERGER, Defendant and Appellee.

Cr. No. 883.

Supreme Court of North Dakota.

Jan. 27, 1983.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellant.

Joseph A. Vogel, Jr., Mandan, for defendant and appellee.

SAND, Justice.

The State of North Dakota, pursuant to North Dakota Century Code § 29–28–07(5),[1] appealed from an order of the Morton County Court suppressing statements made by the defendant, Bradley Allen Berger (Berger).

Berger was charged with driving while under the influence of alcohol, a violation of NDCC § 39–08–01. Prior to trial, Berger moved to suppress statements made by him regarding who was driving a red semitrailer truck[2] because he alleged the statements made by him violated his right to remain silent and were obtained by the State in violation of the rule enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

After a hearing on the motion to suppress, the court concluded that, at the time that law enforcement personnel asked Berger if he was driving the truck, a custodial interrogation situation existed which made operative and necessary the well-known procedural safeguards[3] guaranteed by *Miranda, supra*. Because the *Miranda* warning was not given by police officers, the court granted Berger's motion and suppressed statements made by him to the effect that he was the driver of the truck.

The State appealed and contended that, when law enforcement personnel asked Berger if he was driving the truck, a custodial interrogation situation did not exist.

The issue raised by the State requires us to review and examine the pertinent evidence presented at the suppression hearing to determine whether or not a custodial situation existed when law enforcement personnel asked Berger if he was the driver of the truck.

---

1. NDCC § 29–28–07(5) provides as follows:

   "An appeal may be taken by the state from:

   "5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

   See, *State v. Dilger*, 322 N.W.2d 461 (N.D. 1982).

2. Berger also moved to dismiss the case because the State allegedly destroyed evidence which may have been exculpatory to Berger; to compel the State to produce the video and audio portions of a tape taken of him after his arrest; and to suppress breathalyzer results because the test was not fairly administered. The court denied these motions and they are not at issue in the instant appeal.

3. As to the procedural safeguards to be employed, the Supreme Court stated: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–707.

Two witnesses testified at the suppression hearing. North Dakota State Highway Patrolman Ed Gruchalla testified on cross-examination, in substance, that on 22 May 1982 in the city of Mandan he received a call on the state radio that a red semitrailer truck was being driven in an erratic manner on Interstate 94 towards Mandan, North Dakota; that, as he was driving east on Main Street in Mandan, he observed a red semitrailer truck parked on the sidewalk, facing west, in front of the Western station; that as he drove by the Western station he observed a person climbing out of the red semitrailer truck; that he [Gruchalla] turned around at the next intersection and proceeded back to the Western station; that as he approached the truck in his patrol car he observed a "couple of guys" coming out of the Western station; as he walked up to the driver's side of the cab of the truck, Berger approached the truck; that he [Gruchalla] detected the odor of alcohol on Berger and observed that he had difficulty walking; that Gruchalla took Berger "behind the truck" and administered dexterity tests to Berger; that Gruchalla asked Berger if he was the driver of the truck, but that he [Gruchalla] could not recall if he asked Berger this question when they were by the cab or after they went "behind the truck"; that after Berger completed the dexterity tests he was arrested; and that during this time Berger was not given the Miranda warning.

On re-direct examination, Gruchalla testified that at the time he asked Berger if he was the driver of the vehicle, Berger was not in custody and would have been free to go if he had said he was not the driver.

Bradley Pratt, a deputy sheriff for Morton County, also testified for the State. He testified, in substance, that he arrived at the Western station after Gruchalla and when he arrived he observed Gruchalla talking to Berger; that he observed Gruchalla give the dexterity tests to Berger; that he recalled Gruchalla asking Berger who was driving the truck, but he did not remember the time frame when Gruchalla asked Berger if he was driving the truck, although he "believed" it was "back behind the truck where Mr. Berger was performing the tests for Officer Gruchalla"; and that Gruchalla asked Berger if he was driving the truck before the dexterity tests were administered.

In Miranda v. Arizona, supra, the United States Supreme Court held that the prosecution may not use statements obtained during the "custodial interrogation" of a defendant unless there is compliance with the procedural safeguards of the Miranda warning. (See footnote 3.) The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

In State v. Fields, 294 N.W.2d 404 (N.D. 1980), we discussed the threshhold requirements necessitating the giving of the Miranda warning to a suspect, and stated that mere investigatory focus does not require the giving of the Miranda warning.

We quoted the following from Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1, 8 (1976):

"Although the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the Miranda Court as the basis for its holding. Miranda implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" State v. Fields, supra at 407. [Emphasis in original.]

In State v. Fields, supra, we concluded that the defendant was not subject to a "custodial interrogation" because the atmosphere and physical surroundings did not

manifest restraint or compulsion in a police-dominated atmosphere.[4]

Recently, in *State v. Skjonsby*, 319 N.W.2d 764 (N.D.1982), we noted that the *Miranda* decision did not prohibit all questioning by police officers investigating crime, and we concluded that responses to general on-the-scene investigation questions which were not directed at any particular person were not barred by the Fifth Amendment nor did the failure to give the *Miranda* warning bar their admissibility.

The principles of law announced in *Miranda v. Arizona, supra; Beckwith v. United States, supra; State v. Fields, supra;* and *State v. Skjonsby, supra,* establish that mere investigatory focus does not trigger the necessity for adhering to the specific requirements of *Miranda*.[5] Rather, these cases set forth the concept that *Miranda* warnings were designed to protect against involuntary admissions and confessions procured during inherently coercive custodial interrogation. In conjunction with the aforementioned principles, the factual situation, atmosphere, and physical surroundings during the investigation and questioning must be considered to ascertain the degree of police domination and restraint or compulsion. These principles, as set forth in case law, reaffirm the concept originally announced in *Miranda v. Arizona, supra,* that *Miranda* warnings are required when a person is in custody or deprived of his freedom in any significant way.

Turning to the instant case, we do not believe the factual situation, as established through the testimony presented at the suppression hearing, reflects that, at the time Officer Gruchalla asked Berger if he was the driver of the truck, that Berger was in custody or deprived of his freedom in any significant way.

The record reflects there was at least one other person at the Western station in the immediate area of the truck. The record further reflects that there was a "co-driver" who was with Berger. In Officer Gruchalla's words, he "didn't know who was driving the truck." Although the testimony is unclear as to where the statements were made by Berger, the testimony unequivocally established Berger responded to the question before the dexterity tests were administered. Berger had not been arrested at the time he made the statement, and, further, Officer Gruchalla testified that Berger would have been free to go if he said he was not the driver of the truck.

We do not believe the factual situation, as developed in the instant case, establishes any degree of coercion or the other evils that the *Miranda* warning was designed to prevent. The question and response was of an inquisitory and investigative nature. Although the response implicated Berger as to an element of the crime charged (driving), we do not believe that, in and of itself, establishes a "custodial interrogation" situation. Rather, we believe that, in this instance, the factual situation did not establish a coercive or police-dominated atmosphere; nor do the facts establish that Berger was deprived of his freedom in any significant way. *Compare, State v. Fields, supra.*

The order of the court is reversed and the case is remanded for proceedings consistent with this opinion.

ERICKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

4. In *State v. Fields, supra,* the defendant was in the hospital as the result of injuries received in a car accident and was asked by a police officer if he was driving the car at the time of the accident. The defendant was not in custody nor deprived of his freedom by the authorities in any significant way. The defendant's detention resulted from medical advice and not from any action by authorities. Further, the police officer contacted the defendant at the hospital as part of the accident investigation.

5. Recently, in *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the United States Supreme Court held that the warnings to an accused of his *Miranda* rights did not require a virtual incantation of the precise language contained in the *Miranda* opinion.