**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael J. PITMAN, Defendant and Appellant.**

**Crim. No. 870388.**

Supreme Court of North Dakota.

July 19, 1988.

William Kirschner & Associates, Fargo, for defendant and appellant; William Kirschner (argued).

Melody R.J. Jensen (argued), Asst. States Atty., Fargo, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Michael J. Pitman appeals from a judgment of conviction for driving a motor vehicle while under the influence of intoxicating liquor in violation of section 39–08–01(1)(b), N.D.C.C.[1] We affirm.

On October 2, 1987, at approximately 7:05 a.m., Officer Brumfield of the North Dakota Highway Patrol discovered a one-car accident on Interstate Highway No. 94 near Fargo, North Dakota. Officer Brumfield was not summoned to the accident, but an ambulance unit and fire truck were at the scene when he arrived.

---

1. Section 39–08–01(1) reads in part:

   "*39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.*

   1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

   a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

   b. That person is under the influence of intoxicating liquor...."

In his deposition Officer Brumfield described the accident scene as follows:

"A. I stopped the patrol car and as I recall the fire chief or captain came and talked to me and told me what was going on. The vehicle was on the trees. They pointed out which one the driver of the vehicle had been. I went down and talked with him and identified him as Michael Pitman, and we had some conversation about him driving the car and then I took him up to the patrol car.

"Q. So he was out of the vehicle at that time?

"A. Yes, he was.

"Q. Do you recall what conversation you had with him at that time?

"A. I asked him if he was the driver of the vehicle at the time that the accident occurred. He told me he was. Like I say, then we went on up to the control [patrol] car to write up the accident."

Brumfield then questioned Pitman about the accident inside his police vehicle. Pursuant to a preprinted accident report form,[2] Brumfield asked Pitman when the accident occurred. Pitman told Brumfield that the accident occurred at approximately 6:50 a.m.

As Officer Brumfield completed the report he detected an odor of alcohol and noticed Pitman's eyes were bloodshot and that Pitman had difficulty speaking. Suspecting that Pitman was intoxicated, Brumfield gave Pitman a preliminary screening test known as an alcohol level evaluation roadside test (A.L.E.R.T.). Pitman failed the test. Pitman was then placed under arrest for driving under the influence of an intoxicating liquor. An intoxilyzer test administered at a Cass County law enforcement facility indicated Pitman's blood alcohol content was .17%. At no time did Officer Brumfield recite to Pitman his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Pitman was charged alternatively with driving under the influence of an intoxicating liquor or driving with a blood-alcohol concentration of at least ten one-hundredths of one percent (.10%), in violation of section 39–08–01(1)(a) or (1)(b). Pitman filed a pre-trial motion:

"1. To suppress all statements made by the Defendant after his arrest because the Defendant was in custody and was the subject of interrogation and, in addition, the Defendant was never given his rights under *Miranda v. Arizona,* nor did he waive such rights.

"2. Suppressing evidence of the chemical test of the Defendant because there is no evidence to show that the Defendant was tested within two hours of his driving or of being in physical control of his motor vehicle as required by Chapter 39–20 of the North Dakota Century Code.

"3. Dismissing Count Ia of the Complaint against the Defendant because there is no probable cause to believe that the Defendant had a blood alcohol concentration of at least 0.10% by weight at the time of the performance of the chemical within two hours of driving.

"4. Suppressing all evidence of prior convictions of the Defendant because there is no evidence that, at the time of the entry of such convictions, the Defendant was represented by counsel or validly waived such representation; that the Defendant was granted a jury trial or validly waived such jury trial; that the Defendant confronted the witnesses against him or validly waived such right to confrontation; and that the Defendant entered a guilty plea and, at the time of

---

2. Pursuant to § 39–08–13(1), N.D.C.C., the Commissioner of the North Dakota State Highway Department is required to supply law enforcement agencies a written accident report form. The written report form must "call for sufficiently detailed information to disclose the cause of a traffic accident, conditions then existing, persons and vehicles involved...." § 39–08–13(1), N.D.C.C. In addition, § 39–08–13(4), N.D.C.C., states:

"4. The reports required to be forwarded by law enforcement officers and the information contained therein shall not be privileged or held confidential. If, however, the investigating officer expresses an opinion as to fault or responsibility for the accident, the opinion is confidential and not open to public inspection, except as provided in subsection 5."

such entry of said plea, did so knowingly, intelligently, and with full knowledge of the all potential consequences of said plea.

"5. . . . to suppress all evidence gathered by the police after the administration by Officer Brumfield of the preliminary breath test or ALERT test because such test was given on less than probable cause and, therefore, is in violation under the fourth amendment to the United States Constitution and article 1, section 8 of the North Dakota Constitution as an unreasonable search and all evidence gathered therefrom is the fruits of such unreasonable search."

The Cass County court denied all parts of Pitman's pre-trial motion. With court approval Pitman then entered a conditional plea of guilty for driving while under the influence of an intoxicating liquor pursuant to Rule 11(a)(2) of the North Dakota Rules of Criminal Procedure.[3] We address all of Pitman's contentions in the order in which they appear in his pre-trial motion.

## I

■ Pitman first contends his pre-arrest statement in which he admitted that he was the driver of the vehicle must be suppressed because he was not given his *Miranda* warnings. We disagree.

Pitman's principal objection involves the questioning in the police vehicle:

"The officer interrogated the Defendant while the two men were in the squad car. The interrogation elicited various incriminating statements from the Defendant. For instance, the Defendant admitted having been the driver of the vehicle at the time of the accident. Also, the Defendant gave the officer an estimate as to the time of the accident."

We need not consider the admissibility of the incriminating statement made in the patrol car because, as Officer Brumfield's deposition reflects, Pitman was identified as the driver of the vehicle before Officer Brumfield came upon the scene and apparently admitted being the driver before entering the patrol car. As *Miranda* warnings were not necessary when Brumfield initially questioned Pitman outside the patrol car and confirmed that he was the driver, we need not consider whether or not *Miranda* warnings should have been given inside the patrol car when Officer Brumfield asked the same question.

■ *Miranda* warnings are required when, and only when, the defendant is being subjected to a custodial interrogation. Custodial interrogation was defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 86 S.Ct. at 1612. The *Miranda* holding does not affect "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process. . . ." *Miranda, supra,* 86 S.Ct. at 1629. *See also State v. Skjonsby,* 319 N.W.2d 764, 786 (N.D.1982).

The *Miranda* court left to the courts of each jurisdiction the duty to define when a defendant is "otherwise deprived of his freedom of action in any significant way." 86 S.Ct. at 1612. *See, e.g., State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691, 696 (1967) (*Miranda* warnings apply when officer has "reasonable grounds" to believe motorist has committed offense); *Newberry v. State,* 552 S.W.2d 457, 461 (Tex.Crim.App. 1977) (*Miranda* applies when officer has probable cause to arrest driver and officer considers driver in custody); *State v. Sykes,* 285 N.C. 202, 203 S.E.2d 849, 850 (1974) (*Miranda* warning not applicable until formal arrest or functional equivalent); *United States v. Alvarado Garcia,* 781 F.2d 422 (5th Cir.1986) (Fifth Circuit employs a four factor test in determining whether *Miranda* warnings are necessary).

---

**3.** Rule 11(a)(2), N.D.R.Crim.P., reads:

"*(2) Conditional Pleas.* With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he must be allowed to withdraw his plea."

We have confronted the question of when *Miranda* applies in several cases. *See State v. Berger,* 329 N.W.2d 374, 376 (N.D.1983); *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982); and *State v. Fields,* 294 N.W.2d 404 (N.D.1980). In these cases we have distinguished "custodial interrogation" from "general on-the-scene" investigatory questioning.

In *State v. Fields, supra,* we rejected the principle that *Miranda* warnings are triggered when the investigation of an offense focuses on the defendant. The defendant in *Fields* was questioned by an officer at the hospital. The officer asked the defendant if he was the driver of the vehicle at the time of the accident. The defendant responded yes.

We analyzed the need for *Miranda* warnings in *Fields* as follows:

"Here, when Officer Heinen asked Fields if he was driving the car at the time of the accident, he was not in custody nor deprived of his freedom by the authorities in any significant way. His detention at the hospital resulted from medical advice, not from any action of the authorities. Officer Heinen contacted Fields at the hospital as part of the accident investigation. He went to check the condition of the driver and, if necessary, to have a blood-alcohol test conducted. Fields was not taken to the hospital by the officer but by a friend. Officer Heinen's question was asked at the hospital in the presence of this friend and a nurse on duty. In view of these facts, we conclude that Field's answer was not the result of a custodial interrogation in the police-dominated atmosphere. Thus the failure to advise Fields of his *Miranda* rights prior to asking him if he was the driver of the car at the time of the accident does not make his answer inadmissible, and the trial court erred in suppressing it." 294 N.W.2d at 408.

In essence the only significant factual distinction between the facts in *Fields* and the facts pertaining to what occurred outside the patrol car of this appeal is that Pitman was asked whether or not he was the driver at the scene of the accident

rather than at a hospital. We do not believe this factual distinction has any legal significance for purposes of reciting *Miranda* warnings.

Noting the confusion in the federal and state courts regarding the applicability of its ruling in *Miranda* to interrogations involving minor offenses and to questioning of motorists detained pursuant to traffic stops, the United States Supreme Court granted certiorari in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 3143–44, 82 L.Ed.2d 317 (1984), to determine whether or not "roadside questioning of a motorist detained pursuant to a traffic stop constitute[s] custodial interrogation for the purposes of doctrine enunciated in *Miranda*?" 104 S.Ct. at 3141.

In *Berkemer,* a highway patrol officer observed the defendant's car weaving in and out of a highway lane. The officer pulled the defendant over, briefly questioned him, and concluded the defendant would be charged with a traffic offense and "therefore, his freedom to leave the scene was terminated." 104 S.Ct. at 3141. While still at the site of the traffic stop, the officer asked the defendant whether or not he had been using intoxicants. The defendant admitted consuming beer and smoking marijuana.

At the heart of *Berkemer* was the issue of "whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer,* 104 S.Ct. at 3149. The *Berkemer* Court pointed out that the "only relevant inquiry" in determining whether or not a suspect is in custody for *Miranda* purposes is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer,* 104 S.Ct. at 3151. *Cf. Michigan v. Chesternut,* 56 U.S. L.W. 4558, 4560 (U.S. June 13, 1988), —— U.S. ——, ——, 108 S.Ct. 1975, 1978–1980, 100 L.Ed.2d 565 (test for determining seizure of person under Fourth Amendment is when reasonable man considering the particular police conduct as a whole would

have concluded that police had in some way restrained his liberty).

The *Berkemer* Court also pointed out two features of a traffic stop which mitigate the danger that a person questioned will be induced to "speak where he would not otherwise do so freely." *Id., quoting Miranda,* 86 S.Ct. at 1624. First, a motorist detained pursuant to a traffic stop has an expectation that the stop will be temporary and brief. In this respect, the *Berkemer* Court noted that questioning pursuant to a traffic stop is different from "stationhouse interrogation."

The second distinguishing feature of a typical traffic stop is that it is in public view. Exposure to public view, the Court noted, reduces the likelihood that an unscrupulous officer would use illegitimate means to coerce self-incriminating statements. Moreover, public view diminishes the motorist's fear that, if he fails to cooperate, he will be subjected to abuse. *Id.* 104 S.Ct. at 3149.

The pertinent facts in this case are similar to *Berkemer.* The record clearly reflects that Officer Brumfield came upon an accident and asked several general questions about the accident before inviting Pitman to respond to questions inside the car. Moreover, Officer Brumfield's questions outside the patrol car were in public view and in the presence of others. His question regarding the name of the driver was a general on-the-scene question clearly permissible under *Miranda, Berkemer,* and our decision in *Fields, supra.* Accordingly, Pitman's statement outside the patrol car would be admissible.

## II

■ Pitman next contends the results of the intoxilyzer test must be suppressed because there was no evidence to prove he was tested within two hours of driving or being in physical control of a motor vehicle. While this two-hour time frame is crucial for supporting a violation of driving with a blood-alcohol concentration of at least ten one-hundredths of one percent (§ 39-08-01(1)(a)), it is not an indispensable element of driving under the influence of alcohol

(§ 39-08-01(1)(b)). In *State v. Kimball,* 361 N.W.2d 601, 603 (N.D.1985), we ruled that the court could receive results of an intoxilyzer test in evidence in a case involving a charge of driving under the influence even though the State could not establish that the test was administered within two hours of the defendant's driving. We noted that the State must prove only two elements to convict a person of driving under the influence:

"(1) The defendant was driving a vehicle upon a public highway; and, (2) that while driving he was under the influence of intoxicating liquor so as 'not to possess the clearness of intellect and control of himself that he would otherwise have.'" [Citation omitted.] *Id.*

Thus, assuming arguendo that the State could not prove that Pitman drove a vehicle within two hours of the intoxilyzer test, results of the intoxilyzer test would nevertheless be admissible in a case involving a charge of driving under the influence.

Pitman pled guilty to driving under the influence of alcohol. Thus, the results of an intoxilyzer test, regardless of when it was given, would be probative of the question of whether or not Pitman was under the influence of alcohol.

## III

Pitman's third contention is not relevant in light of our decision to affirm his judgment of conviction for driving under the influence of an intoxicating liquor. Dismissing count "1(a)" does not affect Pitman's conviction under count "1(b)."

## IV

■ Pitman next asserts that the trial court erred in refusing to suppress his prior DUI conviction. Pitman was convicted in Kansas for driving under the influence of intoxicants in June of 1985. The Kansas judgment of conviction indicates Pitman was advised of the charges against him and advised of his right to court-appointed counsel. The judgment also indicates Pitman informed the court that he would retain private counsel. Finally, the judgment

shows counsel appeared with Pitman at two different hearings during the 1985 proceedings.

Pitman contends his prior DUI conviction cannot be used to enhance his sentence because the record of his prior DUI is "silent as to whether [Pitman] was informed of his constitutional rights or if he knowingly and intelligently waived those rights." Pitman relies on our decisions in *State v. Orr*, 375 N.W.2d 171 (N.D.1985), and *State v. Haugen*, 384 N.W.2d 651 (N.D.1986) in support of his contention. Both of these decisions are distinguishable from the present appeal.

In *State v. Orr, supra,* we ruled that in the absence of a valid waiver of counsel, the State could not rely on a prior uncounseled conviction to enhance a term of imprisonment for a subsequent offense. Our decision in *Orr* was based on the belief that uncounseled convictions are inherently "unreliable" and should be "rightly regarded with skepticism." *Id.* 375 N.W.2d at 178.[4] We noted that the practical consequence of our decision in *Orr* would be to require courts to obtain valid waivers of counsel or afford non-indigent defendants the opportunity to retain counsel, or appoint counsel for indigent defendants. Here it is clear Pitman was not only given the opportunity to retain counsel but did in fact retain counsel. In view of the fact that Pitman was represented by counsel, the absence of a statement in the record of Pitman's prior conviction which indicates he knowingly waived his constitutional rights is not crucial to the use of the prior conviction for enhancement of sentencing purposes.[5]

Pitman's reliance on *State v. Haugen, supra,* is similarly defective. In *Haugen*

we concluded the defendant did not knowingly waive his right to a jury trial when the prosecutor advised the uncounseled defendant out of the presence of the court. The defendant in *Haugen* pled not guilty but signed a form in which he purported to waive the right to a trial. *Id.* at 653. Moreover, the prosecutor made an erroneous statement of law concerning Haugen's right to a trial. Thus, *Haugen* involved an uncounseled waiver in which the *prosecutor* incorrectly advised the defendant of his rights.

■ We believe that when, as here, the record clearly establishes that the defendant was represented by counsel when he waived his right to trial, the defendant must do more than simply request that the State prove that the defendant validly waived a trial.

## V

■ Pitman's final contention is that an officer must have probable cause to administer an A.L.E.R.T. test and that "all the evidence which flowed from [an A.L.E.R.T. test without probable cause] must be suppressed as the fruit of the poisoned tree."

The purpose of an on-site chemical screening test such as the A.L.E.R.T. test is to insure that sufficient probable cause exists to warrant an arrest. *State v. Schimmel*, 409 N.W.2d 335, 338 (N.D. 1987); *Asbridge v. North Dakota State Highway Com'r*, 291 N.W.2d 739, 745 (N.D.1980). We suggested in *Schimmel* that an A.L.E.R.T. test is relevant only to determine whether or not there is probable cause to believe a detainee is under the

---

**4.** Justice VandeWalle wrote a special concurrence in which the author of this opinion joined. 375 N.W.2d at 180–81.

**5.** Pitman does not assert that he was not informed of his rights. His "position is, essentially, that the record is insufficient in this case; that Rule 11 requires much more than a mere representation by counsel."

One objective of Rule 11, N.D.R.Crim.P., is to assure that a defendant who pleads guilty makes an informed plea. *See Explanatory Note,* Rule 11, N.D.R.Crim.P. Rule 11(f) requires the pro-

ceedings to be recorded to assist appellate review of the question of whether or not the defendant made an informed decision. Pitman's 1985 Kansas judgment of conviction and his decision to plead guilty are not before this Court for review however. His 1985 judgment of conviction is relevant for the limited purpose of sentencing. Thus, Rule 11, N.D.R.Crim.P., which does not address the use of prior convictions to enhance punishment, is not directly involved.

influence of an intoxicating beverage.[6]

Officer Brumfield came upon an accident in which an individual inexplicably drove his vehicle into the ditch. Officer Brumfield noticed that the driver's breath smelled of alcohol, his eyes were bloodshot, and his speech was slurred. The facts of this appeal convince us Officer Brumfield had probable cause to arrest Pitman before he administered the A.L.E.R.T. test. Accordingly, we need not decide whether or not the A.L.E.R.T. test may be administered without probable cause to believe a detainee has driven under the influence of alcohol. We also need not decide whether or not an improperly administered A.L.E.R.T. test is subject to suppression and whether or not the "fruit" of an improper test is subject to suppression. In *Schimmel* we declined to consider a "plethora of questions about ... screening tests which exceed the scope of this appeal and must await determination on another day." *Schimmel,* 409 N.W.2d at 339 n. 2. The issues Pitman raises today with respect to the A.L.E.R.T. test must also await another day; in the meantime, hopefully, those who labor in the vineyard daily will seek a solution in the legislature to the problem involved in deciding when a roadside test such as the A.L.E.R.T. test is appropriate. If it is appropriate only under the same circumstances as a more complete test, such as a test using an intoxilyzer, it will likely serve little purpose.

For the reasons stated herein, the judgment of conviction is affirmed.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

6. We noted in *Schimmel* that:
"The A.L.E.R.T. chemical screening test assists the law enforcement officer in establishing that probable cause exists which warrants an arrest for driving under the influence of intoxicating liquor. *Asbridge* 291 N.W.2d at 745. 'The ALERT instrument ... is an acceptable roadside screening device in North Dakota designed to assist law enforcement officers

in determining if probable cause exists for a DUI arrest. The implied consent statute ... applies to such devices, but *their results are otherwise inadmissible into evidence.'* *Quick, 'I Only Had 2 Beers!': A North Dakota Prosecutor's Manual for DUI Cases,* 55–56 (Dec. 1984, rev. Oct. 1986)." [Emphasis in original.] 409 N.W.2d at 339.